

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIVIX-DDI, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 8031 |
| | ) | |
| EXPEDIA, INC., TRAVELSCAPE, INC., | ) | |
| and VERIZON INFORMATION | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff CIVIX-DDI, LLC ("Civix") filed this suit against Defendant Verizon Information Services, Inc. ("VIS"), Expedia, Inc. ("Expedia"), and Travelscape, Inc. ("Travelscape") alleging infringement of various claims of U.S. Patent Nos. 6,385,622 ("the '622 patent"), 6,408,307 ("the '307 patent), and 6,415,291 ("the 291 patent"), (collectively the "Patents-in-Suit"). Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative to stay, Civix's patent infringement claims. The Court grants Defendants' motion to dismiss.

### BACKGROUND

In a separate action, currently pending before the Court, Civix filed suit against several defendants, including VIS, Expedia, and Travelscape alleging infringement of five patents, including the Patents-in-Suit. *Civix-DDI, LLC v. Motorola et al.*, No. 03-C-3792, (N.D. Ill.)

("Initial Action"). In that action, Defendants filed a declaratory judgment counterclaim alleging noninfringement and invalidity of all of the claims of the Patents-in-Suit. (R. 26-1; Expedia and Travelscape's Counterclaims; R.104-1; VIS's Counterclaims at 31-2.)[1]

At the Status Hearing on September 9, 2004, Defendants requested that the Court stay third party discovery on prior art issues pending the Court's decisions on Defendants' motions for summary judgment on their licensing defenses. One of the reasons cited by Defendants for requesting the stay was that they needed certainty on the identity of claims asserted by Civix prior to commencing third party discovery. (R. 198-1; Sept. 9, 2004 Transcript at 4:8-23.) In light of Defendants' concerns, the Court questioned counsel for Civix regarding whether it had identified the claims it was asserting against Defendants. (*Id.* at 8:22-9:2.) Civix represented to Defendants and the Court that it had identified the claims it was asserting against Defendants:

> So, what we're talking about are five patents, approximately one independent – or two independent – claims per patent. So, I think we've tried to focus it and narrow it so they know. I think the problem, at least that I'm hearing from them is that they don't like what we've picked. They say, "Well, you've expanded, rather than narrowed, the scope." I think we've narrowed the scope considerably. At least that was the goal. Your Honor indicated that's where you wanted us to be, and that's what we did. So, I think, at least from our perspective, there's nothing else we can do except tell them which claims – [ ] and we've done that.

(R. 198-1; Sept. 9, 2004 Transcript at 5:12-25.) In direct response to the Court's questions, counsel for Civix later confirmed that its list of asserted claims provided to Defendants was not contingent on any proposal or deals:

> **Civix:** Well, let me get rid of the deal business. I don't know about any details, but we're not proposing any deals. This is what we have. What [counsel] said in his letter was, "We understand now that this

---

[1]Unless indicated otherwise, all citations to the record, cite to the docket of the Initial Action, No. 03-C-3792.

2

|          | is going to narrow –" because we're narrowing" – this is going to narrow the invalidity contentions." If they don't want to narrow them, that's their business. Fine. They'll have to live with that at some point in time in this litigation. But as far as we're concerned, these are the claims. This is a summary chart that identifies the claims. We will have claim charts for every one of those claims, applying every one of the claims. Most of them we've done already, but we'll have the rest of them today or tomorrow at the latest. So, from our perspective as the plaintiff, we've identified with specificity what the claims are. We have narrowed it considerably from the number of claims that existed before. We've got five patents with nine independent claims. Dependent claims from those are also identified. They're more narrow. So, I don't think there's anything else we can do. And this is the summary chart. |
|----------|---|
| **Court:** | So, it is your position, [], that putting aside everything else in the letter, which you handed to me, the claims at issue are those that are set forth on Page 2 of your – |
| **Civix:** | That's correct. |
| **Court:** | – letter? |
| [] | |
| **Court:** | And that is not contingent on any deal or any – |
| **Civix:** | No |
| **Court:** | – kind of agreement? |
| **Civix:** | No continencies. If they think there's a deal that we proposed, we'll eliminate that. |
| **Court:** | Okay. |
| **Civix:** | Just so you understand, the letter says, "we understand now that this is going to narrow the validity contentions." They're apparently concerned that it doesn't. They've cited all the prior art known to man. That's fine. If they want to do that, let them go ahead and do it. So, this is what our position is. No deals. |

3

**Court:** Okay.

(*Id.* at 7:24-9:20.)

On September 30, 2004, at the close of fact discovery, VIS served its Supplemental Objections and Response to Civix's Interrogatory No. 3 identifying additional prior art. (No. 04-C-8031, R. 13-1; Civix's Resp. to Def.'s Mot. to Dismiss, Ex. B.) On November 22, 2004, Civix served on Defendants its Third Supplemental Interrogatory Response identifying additional claims it was asserting that Defendants had infringed. (*Id.* at Ex. 3.) On November 30, the Court lifted the stay on third party prior art discovery. (R. 201-1; Ct.'s Dec. 1, 2004 Minute Order.)

After receiving Civix's newly asserted claims, VIS moved to strike Civix's Supplemental Interrogatory Response identifying those new claims. (R. 206-1; VIS's Mot. to Strike.) In response, Civix withdrew its new claims, indicating it would file a separate suit asserting those claims. (R. 207-1; Civix's Resp. to VIS's Mot. to Strike.) Civix proceeded to file this action (the "Second Action") on December 13, 2004.

The Court issued its *Markman* Order in the Initial Action on April 6, 2005. Shortly thereafter, on April 13, 2005, Civix submitted to the Court a Supplemental Citation of Authority regarding its amendments to infringement contentions. (R. 275-1; Pl.'s Supp. Authority.) Civix included as exhibits its Supplemental Initial Disclosures to Defendants asserting additional patent claims against Defendants in the Initial Action. Many of these new claims are included in the patent claims asserted against Defendants in the Second Action.

## ANALYSIS

Defendants make two primary arguments in support of their motions to dismiss the

Second Action. First, Defendants argue that Fed.R.Civ.P. 13(a) bars the Second Action because the newly asserted claims were compulsory counterclaims to Defendants's declaratory judgment claims in the Initial Action. Second, Defendants argue that the doctrine of claim splitting bars the Second Action. In the alternative, if the Court does not dismiss Civix's Second Action, Defendants request that the Court stay this Second Action pending resolution of the Initial Action. Civix opposes dismissal and moves to consolidate the Second Action with the Initial Action.[2]

## I. Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

## II. Rule 13 Prohibits Civix From Asserting Its New Claims In The Second Action

Fed.R.Civ.P. 13(a) provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed.R.Civ.P. 13(a). Rule 13(a) promotes judicial economy by avoiding multiple actions

---

[2] Civix submitted additional authority on this issue on April 13, 2005, arguing that because the Court issued its *Markman* Opinion on April 6, 2005 in the Initial Action, that Civix now had the right to assert new patent claims against Defendants either in the Initial Action or in the Second Action. The Court addresses this new authority in Section V below.

5

involving disputes arising from a common factual background. *In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994).

Under Federal Circuit law, Civix's new claims of infringement were compulsory counterclaims to Defendants' declaratory judgment claims of noninfringement. *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003) (holding that "[w]hen the same patent is at issue in an action for declaration of noninfringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived").[3] Therefore, Rule 13(a) requires Civix to assert its new claims in the Initial Action and not in a separate law suit.

Civix argues that Rule 13(a) does not apply to the instant action because that rule only bars a claim in a second suit if the earlier suit has proceeded to a final judgment. Civix relies on *Asset Allocation & Management Co. v. Weston Employers Ins. Co.*, 892 F.2d 566, 572 (7th Cir. 1989) in support of this argument. Civix's reliance is misplaced. *Asset Allocation* does not permit Civix to file this second action, merely because the Initial Action is still pending. In *Asset Allocation*, the Court held that a first court could not enjoin a party from bringing a compulsory counterclaim in a second court. In addressing the issue of the injunction, the Seventh Circuit noted that Rule 13(a) is usually enforced by a party pleading the first judgment as res judicata in the second suit. *Asset Allocation*, 892 F.2d at 572. The Seventh Circuit did not, however,

---

[3]The Court agrees with Defendants that the Court reaches the same result analyzing the compulsory counterclaim issue under Seventh Circuit precedent. Under the Seventh Circuit's "logical relationship" test Civix's newly asserted infringement claims involving the same patents and the same accused technology have a logical relationship to, and therefore arise out of the same transaction or occurrence as, Defendants declaratory judgment claims of noninfringement from the Initial Action. *In re Price*, 42 F.3d at 1072-73.

address the issue of whether the second court could dismiss the lawsuit under Rule 13(a), nor did it state that Rule 13(a) required that the first suit proceed to judgment.

The plain language of Rule 13(a) does not require that the first case proceed to judgment before a compulsory counterclaim is barred. Instead, Civix relies on Advisory Committee Note 7 to Rule 13 stating that "[i]f the action proceeds to judgment without the interposition of a counterclaim as required by subdivision (a) of this rule, the counterclaim is barred." Fed.R.Civ.P. 13(a), Adv. Comm. N. 7. Advisory notes, however, are non-binding on the Court. *U.S. v. Hayes*, 983 F.2d 78, 82 (7th Cir. 1992); *Deppe v. Tripp*, 863 F.2d 1356, 1362 (7th Cir. 1988). Additionally, the note does not state that a final judgment in the first action is required before a court may bar a compulsory counterclaim in a second action. Instead, it merely confirms the scenario under which this situation typically arises – after a final judgment in the first action. Although no final judgment has been entered, the Initial Action is in its late stages. The Initial Action has been pending since June 2003, (R. 1-1; Compl), and fact discovery between the parties closed on September 30, 2004. (R. 108-1; Ct.'s April 14, 2004 Minute Order.) Rule 13(a) bars Civix from asserting its new patent claims in the Second Action because those claims were compulsory counterclaims to Defendants declaratory judgment claims in the Initial Action.

### III. The Prohibition Against Claim Splitting Also Bars Civix From Asserting Its New Claims In The Second Action

Alternatively, this action is also barred by the doctrine of claim splitting. Courts prohibit a litigant from splitting its claims into multiple actions when the litigant should have brought the claims in a single action. *American Stock Exch., LLC, v. Mopex, Inc.* 215 F.R.D. 87, 91 (S.D.N.Y. 2002) ("It is well established, under the doctrine of 'claim splitting,' that a party

7

cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits"). As discussed above, Civix seeks to assert in the Second Action the identical patents against the identical accused technology as in the Initial Action.

Similar to its argument related to Rule 13(a), Civix argues that the doctrine of claim splitting only applies when the first action has proceeded to judgment. As Defendants point out, however, district courts have applied the doctrine of claim splitting when the first action was still pending. *Oxbow Energy, Inc. v. Koch Indus.*, 686 F.Supp. 278, 281-82 (D. Kan. 1988) (holding that "even absent a final judgment [in the first action,] a party may not split his causes of action"); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, No. 90-0118, 1991 U.S. Dist. LEXIS 20924, *7-8 and *14 (D. Ariz. Jan. 4, 1991) (dismissing second action under doctrine of claim splitting even though first action was still pending). Further, the Seventh Circuit has also stated that a court may dismiss an action "for reasons of wise judicial administration [] whenever it is duplicative of a parallel action already pending in another federal court." *Serlin v. Arthur Anderson & Co.*, 3 F.3d 221, 223 (7th Cir. 1993).

Here, judicial economy requires the Court to dismiss this action. Civix attempts to assert new patent claims that it should have timely brought in the Initial Action. The doctrine of claim splitting prevents Civix from avoiding a potential adverse ruling from the Court regarding the timeliness of asserting the new claims in the Initial Action, by attempting to assert its new claims in the Second Action.

### IV. The Court Will Address Civix's New Claims In The Initial Action

Alternatively, the Court dismisses this action for reasons of judicial economy. Even if

8

Civix had properly filed the Second Action, Civix concedes that the new claims should be addressed in the Initial Action by requesting that the Court consolidate[4] the Second with the Initial Action. On April 13, 2005, Civix submitted Supplemental Initial Disclosures asserting new claims against Defendants in the Initial Action. (R. 275-1; Pl.'s Supp. Authority, Exs. A, B.) Many of those new claims in the Initial Action are also included in the new claims before the Court here. In the interests of judicial economy, the Court will address whether Civix may assert these new claims in the Initial Action. *See Abbott Labs. v. Selfcare, Inc.*, No. 98-C-7102, 1999 WL 162805, *3 (N.D. Ill. Mar. 15, 1999) (noting that the district court has discretion in matters of judicial economy, including in which of multiple patent cases common disputes should be litigated) (citing *Serco Servx. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995)).

## V. Civix's Supplemental Authority Does Not Support Allowing it to Assert New Patent Claims

Civix cites *Becton Dickinson & Co. v. Syntron Bioresearch, Inc.*, 1998 U.S. Dist. LEXIS 222082, *46 (S.D. Cal. 1998) and *Johns Hopkins University v. Cellpro, Inc.*, 152 F.2d 1342, 1357 (Fed. Cir. 1998), arguing that because the Court has construed the claims following a claim construction hearing, Civix has the right to assert new patent claims against Defendants. The Court disagrees with Civix's interpretation of its supplemental authority. Each of the cases cited by Civix involves a party supplementing a liability theory for existing patent claims.[5] Here,

---

[4]In its Response to the Defendants' Motions to Dismiss, Civix requests the Court to consolidate this action with the Initial action to promote judicial economy. (No. 04-C-8031, R. 13-1; Pl.'s Resp. to Def.'s Mot. to Dismiss at 2, 14.)

[5]In *Becton Dickinson*, the patentee sought to amend its theory of infringement for the same claims that it was already asserting. In other words, the patentee sought to change the aspect of the accused product that it contended satisfied a particular claim element. Similarly, in *Johns Hopkins*, the accused infringer sought to add a new prior art reference in support of its

9

Civix seeks to assert an entire new set of patent claims against Defendants after the Court has issued its *Markman* ruling. The *Markman* ruling followed the close of all fact discovery[6] and was based on disputed claim terms from a set of asserted claims that Civix had previously identified as its final set of asserted claims. (R. 198-1; Sept. 9, 2004 Transcript at 8:22-9:19.) Allowing Civix the right to assert new claims against Defendants based on the *Markman* ruling would require at least some additional fact discovery and would likely require an additional *Markman* decision by the Court on any new disputed claim terms.

Allowing the Court's *Markman* ruling to automatically give the patentee the right to assert a new set of patent claims would also defeat one of the purposes of rendering a *Markman* ruling prior to trial – narrowing the factual issues in the case. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1071 (Fed. Cir. 2003). With numerous claims in the five Patents-in-Suit, Civix could maintain its litigation against Defendants for years under this procedure. This would be inefficient and unfair to Defendants. Accordingly, the supplemental authority cited by Civix does not demonstrate that Civix has the right to assert new patent claims against Defendants merely because the Court issued its *Markman* ruling.

---

invalidity theory for an existing asserted patent claim.

[6]The parties have long known that the Court would hold a *Markman* hearing at or near the close of discovery. Counsel for Civix was also aware that the *Markman* process was forthcoming when it made its unequivocal representation that its list of asserted claims was final. (R. 198-1; Sept. 9, 2004 Transcript at 8:22-9:19.)

## CONCLUSION

Rule 13(a) and the doctrine of claim splitting prohibit Civix from asserting patent claims in this Second Action that it failed to timely assert in the Initial Action, involving the same patents, the same parties, and the same accused products. Because Civix now seeks to add new claims in the Initial Action, the Court will address in that case Civix's attempt to bring new claims. Accordingly, the Court grants Defendants Motions to Dismiss Pursuant to Rule 12(b)(6).

DATED: May 2, 2005                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge